UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MIRIAM G. BECKER-BEVERLY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**HUNTSVILLE CITY SCHOOLS,** )<br>)<br>**Defendant.** )<br>) | Civil Action Number<br>**5:20-cv-01932-AKK** |

### MEMORANDUM OPINION

Miriam Becker-Beverly, proceeding in this matter *pro se*, brings Title VII racial discrimination and retaliation claims against Huntsville City Schools, her former employer. *See* docs. 1, 7. Becker-Beverly alleges that HCS (1) treated her differently than her white coworkers by failing to promote her and pay her at the same rate as these coworkers, and (2) retaliated against her for inquiring about this inequitable treatment by transferring her. *See id*. As explained more fully below, Becker-Beverly has failed to prove her claims or to meaningfully rebut the reasons HCS articulates in support of the employment actions at issue in this case. In particular, the bulk of Becker-Beverly's claims are time-barred due to her failure to file a charge with the Equal Employment Opportunity Commission within 180 days of the alleged discriminatory or retaliatory conduct. And her remaining claims fail to raise a genuine issue of material fact regarding whether discriminatory or

retaliatory animus factored into the employment decisions she challenges, in part because she fails to show that HCS's proffered non-discriminatory reasons for its decisions were pretextual. Therefore, HCS's motion for summary judgment, doc. 18, is due to be granted.

## I.

HCS hired Becker-Beverly in 2000, and by 2015 she was a senior accounting clerk at HCS's central office. Doc. 1 at 13. In this role, Becker-Beverly was classified as a grade twelve employee on HCS's salary scale, and by August 2019, her salary was $40,234.32. *Id*.

In October 2018, HCS transferred Becker-Beverly into the accounts payable department, where she joined three white employees. *Id*.[1]  Six months before Becker-Beverly's transfer, HCS had promoted these other employees from accounting clerks to finance generalists and raised their pay from grade fourteen to grade eleven, resulting in salaries of $41,090.64 for one employee and $43,075.92 for the two others, or raises of 25-30%. *Id*. Although Becker-Beverly performed the same work as these employees, she did not receive a raise or promotion when she joined the department. *Id*.

Shortly after she began working in accounts payable, Becker-Beverly asked her supervisors "when [she] would be placed on a comparable pay-scale with the

---

[1] The parties dispute whether this move was temporary or permanent. *See* docs. 21 at 10-12; 22.

other three employees in the department." *Id*. HCS did not respond substantively to her repeated inquiries, and Becker-Beverly alleges that after discussing her request with HCS's compliance director, her immediate supervisor told Becker-Beverly that she "would be moved out of Accounts Payable and back to Finance because [she] had filed a grievance." *Id*.[2] In January 2019, HCS transferred Becker-Beverly back to the finance department, where she resumed her senior accounting clerk duties. *Id*.; doc. 19-1 at 29.

A few months later, HCS officials asked Becker-Beverly to voluntarily transfer into a new vacancy at Whitesburg P-8 School. Doc. 1 at 14. Becker-Beverly initially declined, but after her supervisor intimated that HCS might demote Becker-Beverly for refusing the transfer, Becker-Beverly was "force transferred" to Whitesburg in June 2019. *Id*. Becker-Beverly pursued an internal grievance process and HCS eventually offered to increase her salary to $44,401.40, consistent with grade eleven on the salary scale, but it insisted that she remain stationed at Whitesburg as a senior accounting clerk. *Id*. The offer proved inadequate because "it provide[d] no back-pay and [did] not address the fact that [Becker-Beverly's] salary should have been changed in October 2018 had [she] been treated equally." *Id*. After "[i]t was made clear that [HCS] would not change [its] position[, Becker-Beverly] was forced to resign [] on October 1, 2019." Doc. 7 at 1.

---

[2] Becker-Beverly's supervisor denies making this statement. *See* doc. 19-4 at 6.

Becker-Beverly, through counsel, then filed an EEOC charge alleging, in part, "racial discrimination with respect to promotions, pay, and other terms and conditions of employment," and "retaliation [] for inquiring about [her] inequitable salary." Doc. 1 at 11-12. After the EEOC issued its decision, Becker-Beverly filed the instant suit. *See generally id.* In her amended complaint, Becker-Beverly reiterates the disparate treatment and retaliation claims in her EEOC charge, alleging that she, "as a Hispanic woman[, was] the victim of discrimination and retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, compensation benefits, and other terms and conditions of employment." Doc. 7 at 1.

## II.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Notably, "[t]he court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial." *Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1074 (M.D. Ala. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Courts must also liberally construe *pro se* complaints when considering the propriety of summary judgment. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). If a plaintiff's claims

are barred by the statute of limitations, however, the court must grant summary judgment on those claims regardless of their merits. *See, e.g., AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494 (11th Cir. 1982).

### III.

Construing Becker-Beverly's complaint liberally, the court discerns the following counts: (1) a disparate treatment claim based on HCS's failure to place her "on a comparable pay-scale with the other three white female employees in the Accounts Payable department" while she was performing accounts payable work; (2) a disparate treatment claim based on HCS giving promotions and pay raises to the other employees of between 25-30%, and allowing them to remain at the central office, while eventually giving Becker-Beverly a pay raise of only around 10% and transferring her to Whitesburg; (3) a retaliation claim based on HCS transferring her out of the accounts payable department in January 2019; and (4) a retaliation claim based on HCS transferring her to Whitesburg in June 2019. *See* doc. 7. HCS argues that Becker-Beverly (1) failed to timely file her EEOC charge, and, alternatively, (2) cannot succeed on the merits. Doc. 21 at 18-33. The court addresses each argument in turn.

### A.

To pursue a Title VII claim, a plaintiff must first file a charge of discrimination with the EEOC "within one hundred and eighty days after the alleged

unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e); *see Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1011 (11th Cir. 1982). "EEOC regulations interpret the relevant Title VII provisions to mean that a charge is 'filed' when the Commission receives it." *Pouyeh v. Univ. of Alabama Dep't of Opthamology*, 66 F. Supp. 3d 1375, 1380 (N.D. Ala. 2014) (citing 29 C.F.R. § 1601.13(a)). Thus, if a plaintiff's claims accrued more than one hundred and eighty days before the EEOC received her discrimination charge, she is barred from bringing those claims in a subsequent civil suit. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003).

The EEOC received Becker-Beverly's charge on December 23, 2019, doc. 1 at 11-12, which means that the 180 day cutoff for pursuing Title VII claims for allegedly discriminatory practices is June 26, 2019, *Watson*, 324 F.3d at 1258. Becker-Beverly's work in the accounts payable department ended in January 2019, when HCS transferred her back to the finance department to resume her senior accounting clerk duties. Docs. 1 at 13-14; 19-1 at 22, 29-30. Accordingly, Becker-Beverly's claims stemming from her time in the accounts payable department and her transfer back to finance – Counts I and III – are barred by the statute of limitations.[3]

---

[3] This limitations period may be equitably tolled in certain circumstances, including upon a showing of misleading or fraudulent conduct by the employer, *see Smith v. McClammy*, 740 F.2d

HCS argues that this bar also applies to Becker-Beverly's Whitesburg transfer-related retaliation claim because the Board of Education voted to approve the transfer two days prior to the June 26 statutory cut-off date. Doc. 21 at 28 (citing doc. 19-3). A Title VII claim does not accrue, however, until the employee knew or reasonably should have known of the challenged acts. *Stafford v. Muscogee Cnty. Bd. of Educ.*, 688 F.2d 1383, 1387 (11th Cir. 1982). HCS's superintendent told Becker-Beverly that the board planned to vote on the transfer on June 27, *see* doc.19-1 at 33, 94, and HCS has not presented any evidence that Becker-Beverly knew or should have known that the board approved her transfer on June 24.[4] Thus, viewing the facts in a light most favorable to Becker-Beverly, her Whitesburg transfer-related retaliation claim accrued on or after June 26 and is not barred by the statute of limitations.

Finally, HCS does not address in its briefing what the court has construed as Count II: Becker-Beverly's claim that HCS treated her inequitably in comparison to the accounts payable employees by giving her a smaller pay raise and transferring her out of the central office. HCS gave Becker-Beverly the ~10% raise on August 1, 2019, *see* doc. 1 at 14, and claims stemming from Becker-Beverly's transfer to

---

925, 927 (11th Cir. 1984), but Becker-Beverly does not allege – and the court does not discern – any basis for equitable tolling here.

[4] *C.f.* doc. 19-1 at 36 (Counsel for HCS: "[T]his was your notice that . . . the superintendent was going to recommend your transfer, the recommendation did not occur until June 27th, 2019, correct?" Becker-Beverly: "To my knowledge, yes.")

7

Whitesburg are not barred for the reasons mentioned above. Accordingly, this portion of Becker-Beverly's disparate treatment allegations, insofar as it relates to HCS's post-June 26 conduct, is properly before the court.

**B.**

The court turns next to the merits of Becker-Beverly's surviving claims.

**1.**

To establish a *prima facie* case of race-based disparate treatment under Title VII, a plaintiff must plead that: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)). Notably, an employee suffers an adverse employment action for purposes of a disparate treatment claim only if the challenged action caused a materially negative change in the terms of her employment. *Id.* at 970-73. And to satisfy the similarly-situated prong, a plaintiff must identify colleagues the employer treated more favorably despite being "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019).

Here, Becker-Beverly's non-barred disparate treatment claim stems from HCS's decisions to (1) transfer her to Whitesburg while allowing three white

employees to remain at the central office as finance generalists, and (2) give Becker-Beverly a raise in August 2019 that she describes as disproportionately less than the raises her three white coworkers received when HCS transferred them to accounts payable. *See* docs 1 at 13-14; 7 at 1. As to the latter, the three employees held different positions than Becker-Beverly – finance generalists instead of senior accounting clerks – and thus are not proper comparators. Moreover, Becker-Beverly's raise resulted her earning in a higher salary than these three purported comparators, who were all on lower steps of the grade eleven salary matrix at the time. *See* doc. 19-3 at 4. Put simply, while the percentage of the raise is not to her liking, in light of the higher salary she received, Becker-Beverly did not suffer a materially negative change in the terms of her employment.[5]

As for Becker-Beverly's transfer to Whitesburg, by the time HCS approved this transfer in late June 2019, Becker-Beverly had been back in the finance department performing senior accounting clerk duties for almost six months. *See* doc. 19-1 at 29. The three white employees who remained in the central office, meanwhile, were still in the accounts payable department working as finance generalists. *See* docs. 1 at 13-14; 19-1 at 150-152. Given this disparity in position and duties performed from January 2019 to June 2019, *see* doc. 19-4, and that the

---

[5] To the extent Becker-Beverly's pay claim is based on the period she overlapped with these other employees in the accounts payable department, that assignment ended in January 2019. As such, these pay claims, if any, are barred by the statute of limitations.

other employees were in the department well before Becker-Beverly's initial transfer to accounts payable in October 2018, *see* doc. 1 at 13, Becker-Beverly's proffered comparators were not similarly situated in all material respects. *Lewis*, 918 F.3d at 1218. Since Becker-Beverly has not produced any other evidence of racial discrimination, she has failed to establish her *prima facie* case, and summary judgment is therefore warranted as to her surviving disparate treatment claim. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004).

Even if Becker-Beverly had established a *prima facie* case, HCS has articulated legitimate, non-discriminatory reasons for promoting the three other employees and transferring Becker-Beverly to Whitesburg, and Becker-Beverly has not shown that these reasons were pretextual. HCS maintains that it created the finance generalist roles as part of a reorganization and to reflect that these three employees were performing duties beyond those expected of accounting clerks. *See* doc. 19-5 at 2-3. HCS's restructuring also called for senior accounting clerks, like Becker-Beverly, to work at a specific school instead of the central office, *see id.* at 3-4, and Becker-Beverly was already performing bookkeeping duties at Whitesburg during the end of the 2018-2019 school year, *see* doc. 19-7 at 1-2. Becker-Beverly has not offered any evidence to rebut this non-discriminatory rationale for her transfer, and thus cannot avoid summary judgment. *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162-64 (11th Cir. 2006)

## 2.

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970 (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). Relevant here, protected activities refer to filing a charge with the EEOC or "oppos[ing] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). Where an employee neither participated in an EEOC charge nor voiced her opposition to an unlawful employment practice prior to her employer's alleged retaliation, her retaliation claims cannot survive summary judgment. *See Anduze v. Fla. Atl. Univ.*, 151 F. App'x 875, 877-79 (11th Cir. 2005).

Here, the transfer to Whitesburg occurred in June 2019 and predates the protected conduct. Doc. 1 at 13-14. In particular, Becker-Beverly did not initiate an internal grievance process until several weeks after the transfer, and she filed a charge with the EEOC that December. *See id*. Thus, she cannot show that the Whitesburg transfer was in retaliation for either of these activities. Moreover, although Becker-Beverly repeatedly inquired about raising her allegedly inequitable salary well before the transfer, she did not at any point in that process allege that her race or another prohibited animus factored into the pay discrepancy. Instead,

Becker-Beverly first raised the issue of possible racial discrimination in her July 2019 grievance. *See* doc. 19-1 at 57. Given that Becker-Beverly engaged in these protected activities only *after* HCS transferred her to Whitesburg, she cannot show that there is a causal connection between the acts and her transfer, and her retaliation claim therefore fails.[6]

### IV.

To close, Becker-Beverly's claims that accrued prior to June 26, 2019, are barred by the statute of limitations, and, as to her remaining discrimination claims, Becker-Beverly has failed to show that HCS subjected her to an adverse employment action or treated her less favorably than similarly-situated comparators. Accordingly, HCS's motion for summary judgment is due to be granted.

**DONE** the 20th day of May, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[6] Additionally, as outlined above, Becker-Beverly has not shown that HCS's proffered reasons for her transfer were merely pretext for any discriminatory or retaliatory animus.